IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **EXECUTIVE BOAT & YACHT BROKERAGE,**<br><br>                      Plaintiff,<br><br>vs.<br><br>**ARAMARK SPORTS and ENTERTAINMENT SERVICES, INC., et al.,**<br><br>                      Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:07CV69DAK |

This matter is before the court on Defendant Aramark Sports and Entertainment Services, Inc.'s Motion for Summary Judgment and Plaintiff Executive Boat & Yacht Brokerage's Motion to Strike.  The court held a hearing on the motions on September 10, 2008.  At the hearing, Plaintiff was represented by Budge Call, and Defendant was represented by Anthony Kaye.  The court has carefully considered the memoranda, exhibits, declarations, and other materials submitted by the parties, as well as the facts and law relevant to the motion.  Now being fully advised, the court renders the following Order.

### I.  BACKGROUND

Plaintiff has been providing boat brokering services for clients for fifteen years.  It provided services at the Glen Canyon National Recreational Area ("the Park") until 1997 when the National Park Service ("NPS") adopted a Commercial Services Plan requiring a license. Plaintiff requested an application from the NPS for an Incidental Business Permit for boat

brokering inside the Park. In response, on March 25, 2003, the NPS notified Plaintiff that boat brokering was a service that only an authorized concessioner could do and a permit would not be granted. The letter states that "effective June 1, 2003, [Plaintiff] must cease brokering any vessels that are slipped, moored or in dry storage within Glen Canyon NRA. Continuation of current business practices after that date will be in violation of 36 C.F.R. 5.3 'Commercial Operations.'" On that same day, NPS directed Aramark, an authorized concessioner in the Park, to act as follows: "we are directing you to notify your customers that they may not use any other brokers in the sale of their vessel while moored or stored within the boundaries of Glen Canyon [NRA]."

Again, on April 17, 2003, the NPS notified Plaintiff that "[i]n the past, brokering of vessels within Glen Canyon NRA was provided without authorization and in violation of 36 C.F.R. § 5.3 by a number of entities. This practice must stop and we are taking the necessary steps to notify unauthorized providers to cease and desist." On April 24, 2003, Aramark followed the directions of the NPS and sent out letters to the boat owners in the Park indicating that Plaintiff was not authorized to do business for vessels located inside the Park.

On June 5, 2003, NPS published the Glen Canyon National Recreation Area Policy for Boat Brokering ("2003 Policy"). The 2003 Policy was provided to Plaintiff the day it was published. The policy stated that the NPS's "objective is to have [its] concessioners provide boat-brokering services to manage all transfers of boats and/or slips and buoys within Glen Canyon NRA to ensure compliance with laws, regulations, policies and guidelines. If the vessel is removed from the recreation area prior to advertising or selling, no brokering services are required by the NPS concessioner(s)." The policy also identified several benefits to the Park as a result of the new policy and made the unauthorized brokering of boats illegal.

Plaintiff brought a previous action in this court, naming Aramark and the NPS as defendants. The case was nearly identical to the present case. In that case, the NPS was dismissed as a defendant and the case was eventually dismissed in January of 2007 for failure to prosecute.

On April 27, 2004, NPS issued a second Glen Canyon National Recreation Area Policy for Boat Brokering ("2004 Policy"). The 2004 Policy provides that boat brokering within the recreation area is only provided through authorized concessioners. It also states that the "policy applies to all personal property advertised for sale or sold within the boundaries of Glen Canyon NRA, most specifically vessels."

A few weeks before the previous lawsuit was dismissed, on January 1, 2007, Aramark sent out another letter to boat owners stating that it was the only authorized boat broker for vessels located inside the Park. Based on this January 1, 2007 letter, Plaintiff brought this action seeking injunctive relief for its intentional interference with economic relations cause of action. This court denied Plaintiff's motion for preliminary injunction.

## II. DISCUSSION

### Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiff's claims for declaratory relief that it is in compliance with NPS regulations and intentional interference with economic relations. Plaintiff claims that NPS regulations allow it or should allow it to advertise and sell boats that are located in the Park as long as it does not physically enter the Park.

**A. Declaratory and Injunctive Relief Claims**

Congress has given the Secretary of the Interior the power to contract with corporations to provide services necessary to maintain recreational facilities in park areas. *See* 16 U.S.C. §§ 1,

3

3. Section 3 broadly states that the Secretary shall make "rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service." *Id.* §3.  And, more specifically, "the Secretary shall utilize concessions contracts to authorize a person, corporation, or other entity to provide accommodations, facilities, or services to visitors to units of the National Park System."  16 U.S.C. § 5952.  Congress has recognized that "[n]othing in this subchapter shall be construed as limiting the authority of the Secretary to determine whether to issue a concessions contract or to establish its terms and conditions in furtherance of the policies expressed in this subchapter." *Id.* § 5952(10).

Based on its statutory charge, the NPS promulgated regulations regarding commercial operations in national parks.  Under 36 C.F.R. § 5.3, "[e]ngaging in or soliciting any business in park areas, except in accordance with the provisions of a permit, contract, or other written agreement with the United States, except as such may be specifically authorized under special regulations applicable to a park area, is prohibited."  The NPS also published the 2003 Policy and 2004 Policy with respect to boat brokerage in the Park.  The policy prohibits unauthorized or uncontrolled boat brokering services for vessels located in permanent storage in slips, buoys, or dry storage within the Park.  In addition, the NPS identified several benefits to the Park that would be served by the new policies.

Plaintiff argues that the NPS does not have the authority to prohibit advertising outside the Park.  In essence, Plaintiff's position is that it should be allowed to advertise the sale of a boat located within the Park if it does the advertisements outside of the Park.  Plaintiff contends that its advertisements outside the Park cannot be a violation of 36 C.F.R. § 5.3 because that regulation pertains to "engaging in or soliciting any business in park areas."  Furthermore,

Plaintiff argues that the court is not bound by the NPS's interpretation of 36 C.F.R. § 5.3 or its boat brokering policies because this court can make its own determination of federal law.

Both parties contend that *United States v. Carter*, 339 F. Supp. 1394 (D. Ariz. 1972), supports their position. In *Carter*, the court enjoined a boat rental company from engaging in or soliciting business within the Park because "[t]he management controls given the Secretary over the recreation area and the effectiveness of his power to give contract preference to concessioners in the recreation area would be substantially diminished if an individual were allowed to perform a commercial service in the recreation area merely because the service contract was entered into outside the recreation area." *Id.* at 1399. In *Carter*, the defendant had a rental business that included bringing rental boats into the Park for his customers and providing guide services within the Park.

Because the *Carter* court only enjoined the Defendant from conducting activities within the Park, Plaintiff asserts that the NPS cannot prohibit its advertising which occurs outside the Park. But it is the location of the boat, not the location of the advertisement, that is relevant. The NPS has determined that selling boats that are located in the Park is doing business in the Park. The NPS encountered several problems with unauthorized sales and it promulgated policies in an effort to better manage the Park resources. The court finds that such policies are within the NPS's statutory charge and are reasonable in scope. Plaintiff's advertising activities occur outside the Park but its subsequent sales activities that would be attendant with its outside advertising occurs within the Park. The advertisement and sale of these boats, therefore, affect NPS and its authorized concessioner. Accordingly, the NPS can properly regulate such conduct. Plaintiff is free to advertise and sell boats if its customers remove their boats from the Park.

The court concludes that the NPS's policy that boats located in the Glen Canyon NRA

must be sold through the authorized concessionaire whether the advertisement of the boat takes place inside or outside the Park is reasonable. The court, therefore, grants Defendant's motion for summary judgment on Plaintiff's declaratory relief claim. And, to the extent that the court's conclusion on the declaratory relief issue controls the injunctive relief claim, the court similarly finds the injunctive relief claim without merit.

### B. Intentional Interference

Defendant also argues that it is entitled to summary judgment on Plaintiff's claim for intentional interference with economic relations. To succeed on a claim for intentional interference with economic relations, "[a] plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the Plaintiff." *St. Benedict's Development Co. v. St. Benedict's Hospital*, 811 P.2d 194, 200 (Utah 1991).

Plaintiff argues that this claim cannot be dismissed when all facts and inferences are viewed in favor of Plaintiff. Defendant intentionally sent the letters to boat owners knowing that some of them were Plaintiff's customers and with the intent of preventing them from using Plaintiff's services. The court, however, finds that there are no facts to support a finding that Defendant has interfered with Plaintiff's business for an improper purpose or through improper means because Defendant is merely enforcing the NPS's policies. Defendant sent the letters at the NPS's request. And the representations in the letters merely restate NPS policy. Plaintiff has not demonstrated an issue of fact on this cause of action. Because there is no evidence to support a finding that Defendant's letters are improper or made for an improper purpose, Defendant is entitled to summary judgment on Plaintiff's claim for intentional interference with economic relations.

**Plaintiff's Motion to Strike**

Plaintiff moves to strike several exhibits attached to the Affidavit of Angela Adams and filed in support of Defendant's Motion for Summary Judgment.  However, the exhibits consist of NPS policies and statements of which this court can take judicial notice, materials that were attached to Plaintiff's Verified Complaint, letters that were produced in discovery, and other letters that are business records.  The court also concludes that it can take judicial notice of the information contained on the NPS's website.  The court, therefore, concludes that there is no basis for the motion to strike.  Accordingly, Plaintiff's Motion to Strike is denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion to Strike is DENIED.  Accordingly, the court instructs the Clerk of Court to enter judgment in favor of Defendant.  This case is closed, each party to bear its own costs and fees.

DATED this 12th day of September, 2008.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge